# In the United States Court of Federal Claims

No. 20-161T
Filed: October 22, 2020

| | |
|---|---|
| **ALL STACKED UP MASONRY, INC.,**<br><br>*Plaintiff*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | Keywords: Motion to Dismiss; RCFC 12(b)(6); payroll tax; tax penalty abatement; reasonable cause; willful neglect; informal claim doctrine; 26 U.S.C. § 6511; 26 U.S.C. § 3403; 26 U.S.C. § 6651(a); 26 U.S.C. § 6656(a) |

*Kathleen Elizabeth (Splett) Pfutzenreuter*, Wagner Tax Law, Minneapolis, MN, for Plaintiff.

*Patrick Phippen*, Trial Attorney, Tax Division, with whom were *G. Robson Stewart*, Assistant Chief, *David Pincus*, Chief, Court of Federal Claims Section, and *Richard Zuckerman*, Principal Deputy Assistant Attorney General, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

"Taxes are what we pay for civilized society." *Compania General De Tabacos de Filipinas v. Collector*, 275 U.S. 87, 100 (1927) (Taft, C.J.). For good reason, there are few lawful justifications for failing to pay one's taxes. Plaintiff All Stacked Up Masonry, Inc. ("All Stacked Up"), a corporation, believes it has such an excuse. It brings this suit to challenge penalties and interest assessed by the Internal Revenue Service ("IRS") following its failure to file the appropriate payroll tax documents and its failure to timely pay payroll tax liabilities for multiple tax periods.

All Stacked Up filed its Complaint seeking a refund of $95,590.67, the amount it previously paid to the IRS in tax penalties and interest for the periods ending December 31, 2013, through December 31, 2015. (Compl. at 8, ECF No. 1). All Stacked Up asserts that its failure to comply with its tax obligations should be excused due to "reasonable cause" and thus, the penalties and interest it paid should be refunded. (*See id*.).

The United States moved to dismiss under RCFC 12(b)(6), arguing the penalties were properly assessed and that All Stacked Up does not allege facts supporting a claim of "reasonable cause" that would entitle it to a refund. (*See* Def.'s Mot. to Dismiss at 12, ECF No. 11). Additionally, the United States argues that a portion of All Stacked Up's claim—relating to the first quarter of 2014—is barred because it is outside the applicable three-year recovery period. (*Id*. at 9).

The basis of All Stacked Up's assertion of reasonable cause involves an injury suffered by the owner, Sean Spraungel. This injury caused All Stacked Up to delegate tax preparation responsibilities to an employee, who could not properly operate the tax preparation software. The employee's failures left All Stacked Up noncompliant with its tax obligations. Although Spraungel may have suffered significant injuries after falling on ice, and other employees of the corporation may have experienced user difficulties in operating tax preparation software, these excuses cannot establish "reasonable cause" necessary to abate tax penalties assessed by the IRS. Furthermore, even if All Stacked Up could show reasonable cause for failing to file a return or pay the taxes owed, part of All Stacked Up's claim would nevertheless be barred by the applicable three-year "look-back" period.

For these reasons, All Stacked Up fails to allege facts which, taken as true, could sustain its legal claims, and thus, the United States' Motion to Dismiss is **GRANTED**.

## I. Legal Framework

The tax penalties at issue stem from nonpayment of payroll tax obligations and failure to file tax returns. "Payroll taxes" are deducted from employees' wages by the employer, held in trust by the employer, and are periodically due to the United States under the Federal Insurance Contribution Act (commonly known as "FICA"). *See* I.R.C. §§ 3101, 3402, 7501 (Title 26 U.S.C.).

Liability to remit payroll taxes to the United States lies with the employer. I.R.C. § 3403. Depending on the size of the employer and the amount of payroll taxes collected, the employer must file returns on a Form 941 or 944 to report Social Security, Medicare, and federal income tax withholding liability. I.R.C. § 6011; Treas. Reg. §§ 31.6011(a)-1(a)(1), (5); 31.6011(a)-4(a)(1) (Title 26 C.F.R.). Form 941 is due quarterly; Form 944 is due annually but is only available to smaller employers.[1] Treas. Reg. §§ 31.6011(a)-1(a)(1), (5); 31.6011(a)-4(a)(1). Employers file a Form 940 to report federal unemployment tax liability. Treas. Reg. § 31.6011(a)-3(a).

Payroll tax returns must be filed on the last day of the month that follows the date that payroll taxes accrued in the preceding period. Treas. Reg. § 31.6071(a)-1(a)(1). For example, for first quarter tax liabilities that accrued from January 1 to March 31, the payroll tax return for that quarter is due April 30. For annual filers, the Form 944 return would be due January 31 the following year. Payment of any tax liability is due the same day the returns are due. I.R.C. § 6151(a). In the interim, withheld taxes that are reported on either Form 941 or 944 must be deposited either monthly or semi-weekly in an authorized Government depository account. I.R.C. § 6302; Treas. Reg. §§ 31.6302-1(a).

---

[1] "Qualified employers [who may opt-in to file a Form 944] are those with an estimated annual employment tax liability (that is, social security, Medicare, and withheld federal income taxes) of $1,000 or less for the entire calendar year, except . . ." Treas. Reg. § 31.6011(a)-1(a)(5) (excluding employers required to file returns for certain agricultural employees or withhold certain household employment taxes).

The IRS may assess penalties for a failure to make the monthly or semi-weekly deposit required by I.R.C. § 6302, a failure to remit the tax liability by the quarterly or annual due date, and/or a failure to file tax returns before the due date. I.R.C. §§ 6651 (penalties for failure to file tax return or to pay tax), 6656 (penalties for failure to make deposit of taxes). Tax liabilities that remain unpaid after the due date incur interest penalties. I.R.C. § 6601 (interest on underpayment, nonpayment, or extensions of time for payment of tax). The IRS assesses failure-to-file and failure-to-pay penalties as a percentage of the net unpaid liability, meaning a taxpayer who overpays prior to the quarterly (or annual) due date cannot be assessed these penalties. Treas. Reg. § 301.6651-1(d) (penalty imposed on net amount due). However, if the taxpayer can show the failure-to-deposit, failure-to-file, or failure-to-pay was "due to a reasonable cause and not due to willful neglect" the taxpayer will not be assessed a penalty for failing to comply with the statutory requirements detailed above. I.R.C. §§ 6651(a), 6656(a).[2]

## II. Background

All Stacked Up has provided little information about the nature of its business, other than that it is a corporation with employees that provides masonry work. (*See generally*, Compl.; Pl.'s Resp. at 10). For the tax period ending December 31, 2012, All Stacked Up filed payroll tax returns annually using a Form 944. (Compl., Ex. M at 77). However, All Stacked Up did not file its 2012 return until April 14, 2014, two years late. (*Id*.). When the IRS processed the return on August 4, 2014, it assessed penalties for failure to file a tax return, failure to deposit, and late payment of the tax, in addition to charging interest on the overdue liability. (*Id*. at 78). Despite

---

[2] The statutes are poorly worded. "Reasonable cause" has been interpreted to mean the absence of "carelessness," while "willful neglect" implies a level of intent. Thus, it would seem that the taxpayer's failure to establish the absence of carelessness is sufficient for a court to uphold penalties assessed by the IRS, while the presence of intent not to comply would also necessarily negate any plausible assertion of "reasonable cause." In the seminal case on this issue, *Boyle*, Judge Posner, dissenting from the Seventh Circuit panel opinion, and Justice Brennan, writing in concurrence for the Supreme Court, both noted the confusion:

> [I]n making "willful neglect" the opposite of "reasonable cause" the statute might seem to have modified the ordinary meaning of "reasonable," a Treasury Regulation the validity of which is not questioned requires the taxpayer who would establish "reasonable cause" to show that he "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." [I.R.C.] § 301.6651–1(c)(1). Thus, the test is ordinary negligence.

*Boyle v. United States*, 710 F.2d 1251, 1256 (7th Cir. 1983), *rev'd,* 469 U.S. 241 (1985) (Posner, J., dissenting); *see also Boyle v. United States*, 469 U.S. 241, 252 n.1 (1985) (Brennan, J., concurring) (noting that the standard of taxpayer liability imposed by § 6651 "might plausibly be characterized as ambiguous[.]").

being late on its filing, deposit, and payment obligations, All Stacked Up overpaid its 2012 liabilities, and thus, a credit was carried forward to its 2013 obligations. (*Id*. at 78, 23).

Beginning in 2013, All Stacked Up filed tax returns quarterly using a Form 941. (Compl., Ex. M at 21, 79). All Stacked Up experienced significant trouble complying with its quarterly filing obligations in 2013. Its first quarter returns, which were due April 30, and its second quarter returns, due July 31, were not filed until October 7, 2013. (*Id*. at 21, 23). Its fourth quarter returns, due January 31, 2014, were not filed until July 13, 2015. (*Id*. at 26). Likewise, payments and deposits were routinely late. This resulted in penalties and interest charges. Particularly, for the fourth quarter of 2013—the first period at issue in this refund suit—All Stacked Up was assessed failure to deposit penalties and interest for late payment. (*Id*. at 26–27).

All Stacked Up's noncompliance continued throughout 2014 and 2015. All Stacked Up failed to file any of its 2014 quarterly returns until July 13, 2015. (Compl., Ex. M at 28, 30, 33, 35). In 2015, only the third quarter return was timely filed. (*Id*. at 37, 39, 41, 43). All Stacked Up also failed to deposit, underpaid, and/or paid its taxes late in each of the four quarters in 2014 and 2015. (*Id*. at 28–43). This, again, compelled the IRS to assess penalties and interest for the respective violations. (*Id*.).

On October 31, 2017, All Stacked Up sought relief from the IRS for penalties assessed from the tax period ending the fourth quarter of 2013 through the fourth quarter of 2015—a total of nine consecutive quarters. (Compl., Ex. A at 1). All Stacked Up filed a Form 843 (Claim for Refund and Request for Abatement) for each of these nine quarters, referring the IRS to an Attachment that detailed the basis for refund or abatement. (*See, e.g.*, *id*. at 4, 5, 6). The Attachment stated that the owner of All Stacked Up was seriously injured in March of 2013, requiring the owner to hire a tax preparer for the business. (*Id*. at 13). All Stacked Up admits that the employee failed to keep the business compliant with its tax depositing, filing, and payment obligations, and consequently, terminated its tax preparer. (*Id*. at 13–14). All Stacked Up also highlighted issues with its tax preparation software ("QuickBooks") but was "unsure" whether the malfunction was user error or the program itself. (*Id*.). Nevertheless, All Stacked Up asserted that the owner's injury and subsequent failures of the delegated tax preparer constituted "reasonable cause" such that All Stacked Up should be relieved of the penalties and interest it was assessed and refunded the sums paid toward these charges. (*Id*. at 14).

The IRS responded to each of the nine Form 843 requests, disallowing each claim. (Compl., Exs. B, C, D, E, F, G, H, I, J). All Stacked Up appealed each of these disallowance notices, asserting its failure to comply with its tax obligations was due to "reasonable cause" as outlined in the Internal Revenue Manual and requesting relief from the assessed penalties. (Compl, Ex. K at 1–2). Upon completion of the review, the IRS Office of Appeals notified All Stacked Up and recommended abatement of "16.66 [percent] of [All Stacked Up's] failure to file, failure to pay and failure to deposit penalties for tax periods December 31, 2013, through tax period June 30, 2014." (Compl., Ex. L at 1 (abating three quarters of penalties)). Thus, the IRS abated a total of $3,197.03 in penalties and sustained the remainder of the penalties. The IRS also declined to waive accrued interest and notified All Stacked Up that penalties and interest would continue to accrue until the outstanding balance was paid in full. (*Id*.). All Stacked Up asserts that it has since paid its outstanding tax liabilities in full. (Compl. at 1).

All Stacked Up filed its Complaint in this Court on February 18, 2020, generally asserting the same allegations it raised on appeal to the IRS.

### III.   Standard of Review

A motion to dismiss for "failure to state a claim upon which relief can be granted" is appropriate under RCFC 12(b)(6) only "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the allegations in the [pleading]" and "must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). To invoke the jurisdiction of this Court, the taxpayer must have paid the disputed tax and filed an administrative claim for refund or credit which was denied. 28 U.S.C § 1491; 26 U.S.C § 7422.

For a claim to be properly stated, the pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### IV.   Analysis

To survive the United States' motion to dismiss, All Stacked Up must allege facts to support its claim in two parts. All Stacked Up must allege both that it had "reasonable cause" for failing to comply with its tax obligations, and that its failures were not due to "willful neglect." *United States v. Boyle*, 469 U.S. 245 (1985). As stated above, the United States has moved to dismiss the claim on the basis that All Stacked Up has not alleged facts that can support a claim of "reasonable cause." Additionally, the United States has moved for partial dismissal of All Stacked Up's first quarter 2014 claim because the payments were made outside of the three-year statutory "look-back" period.

"Whether the elements that constitute 'reasonable cause' are *present* in a given situation is a question of fact, but what elements *must* be present to constitute "reasonable cause" is a question of law." *Boyle*, 469 U.S. at 249 n.8 (emphasis in original).[3] As discussed above, if the taxpayer can show "reasonable cause" for failure to file or failure to pay the tax liability assessed, and that its failure was not due to "willful neglect," it may avoid the penalties under I.R.C. § 6651 and § 6656. "Reasonable cause" must be shown by demonstrating "the taxpayer

---

[3] Though it involved a summary judgment, *Boyle* nonetheless provides the framework for evaluating the sufficiency of a Complaint claiming a tax refund for "reasonable cause." *See Deaton Oil Co., LLC v. United States*, 904 F.3d 634 (8th Cir. 2018) (Relying on *Boyle*, affirming dismissal under Rule 12(b)(6) where the corporate taxpayer did not allege "disability . . . brought about by circumstances beyond [the taxpayer's] control").

5

exercised ordinary business care and prudence" but was nevertheless *unable* to file the return or pay the tax within the prescribed time. Treas. Reg. § 301.6651-1(c)(1). If the failure was due to "willful neglect," the taxpayer may not avoid the penalties under I.R.C. Sections 6651 and 6656. The taxpayer seeking to escape penalty bears the "heavy burden" of demonstrating both reasonable cause and the absence of willful neglect. *Boyle*, 469 U.S. at 245.

The Court agrees with the United States that, on the facts alleged, All Stacked Up cannot demonstrate it had "reasonable cause" for failing to comply with its tax obligations. *See Lindsay v. United States*, 295 F.3d at 1257. The Court further agrees with the United States that part of All Stacked Up's claim falls outside of the three-year look-back period and is therefore substantively barred by statute.

*A. All Stacked Up Does Not Allege Facts to Support a Claim of "Reasonable Cause."*

All Stacked Up alleges "reasonable cause" exists to excuse its failure to fulfill its obligations under the tax code because the owner acted as a reasonably prudent business person in delegating tax preparation duties to an employee following the owner's injury. (Compl. at 8). All Stacked Up further asserts that it "worked in good faith to be in compliance with the federal tax laws," and that tax preparation errors are attributable to difficulties using the QuickBooks computer software. (*Id*.). The United States argues that the duty to file returns, duty to deposit, and duty to pay taxes are all nondelegable duties, and All Stacked Up's asserted excuses on behalf of its employee cannot demonstrate "reasonable cause." (Def.'s Mot. to Dismiss at 21).

"Reasonable cause" is undefined by the tax code, but together with Treas. Reg. § 301.6651-1(c)(1), is interpreted to "make absence of fault a prerequisite to avoidance of the [failure-to-file and failure-to-deposit] penalt[ies]." *Boyle*, 469 U.S. at 246 n.4. Therefore, taken together with the requirement that the failure not be due to "willful neglect," the taxpayer seeking a refund must allege "that [its] failure to file [or deposit] on time was the result neither of *carelessness*, reckless indifference, nor intentional failure." *Id*. (emphasis added). Essentially, the failures to file, deposit, or pay must have been "beyond the taxpayer's control" in order to avoid penalty. *Id*. at 248 n.6. At the motion to dismiss stage, if the taxpayer does not allege absence of fault, or affirmatively alleges carelessness caused its failures, it cannot demonstrate "reasonable cause" and thus its claim must be dismissed.

In *Boyle*, reciting from the Internal Revenue Manual,[4] the Supreme Court listed reasons that the IRS might deem to constitute "reasonable cause." They include:

> [U]navoidable postal delays, the taxpayer's timely filing of a return with the wrong IRS office, the taxpayer's reliance on the erroneous advice of an IRS officer or employee, the death or serious illness of the taxpayer or a member of his immediate family, the taxpayer's unavoidable absence, destruction by

---

[4] The Internal Revenue Manual is not binding on this Court. *Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019); *Eaglehawk Carbon, Inc. v. United States*, 122 Fed. Cl. 209, 221 (2015) ("[I]t is beyond cavil that the [Internal Revenue Manual] does not have the force of law.").

6

> casualty of the taxpayer's records or place of business, failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion, and the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in the preparation of a return.

*Boyle*, 469 U.S. at 243 n.1. These reasons carry the flavor of *impossibility*. To make out a claim for refund of penalties due to "reasonable cause," the taxpayer must plead it was *unable* to file its returns and pay taxes due to no fault of its own. The taxpayer's claim must not be based on mere negligence, nor forgivable mistake. Bearing no fault, the taxpayer must allege compliance was thwarted by events beyond its control.[5]

Additionally, it is well-established that a taxpayer's duties to comply with the tax code are nondelegable as a matter of law. *Boyle*, 469 U.S. at 252. As a matter of *business practice*, the taxpayer is, of course, free to retain or employ whomever it pleases to prepare taxes on its behalf. However, that does not relieve the taxpayer of its legal obligations under the tax code, and any carelessness, reckless indifference, or intentional failure by the taxpayer's agent or employee is attributable to the taxpayer. *See Boyle*, 469 U.S. at 250 ("[t]o say that it was 'reasonable' for the [taxpayer] to assume that the [agent] would comply with the statute may resolve the matter as between them, but not with respect to the [taxpayer's] obligations under the statute.").

In *Boyle*, the Supreme Court laid down a bright-line rule articulating these principles. *Id*. at 249. In that case, the Court agreed that the taxpayer's retention of an attorney to prepare tax filings on his behalf was "plainly an exercise of . . . 'ordinary business care and prudence'" though not alone reasonable cause. *Id*. at 250. The Court made clear that "Congress has placed the burden of [tax obligations] on the [taxpayer], not on some agent or employee of the [taxpayer]." *Id*. at 249. That duty, the Court held, is "fixed and clear" and simply because the agent was capable and "expected to attend to the matter does not relieve the [taxpayer] of [its] duty to comply with the statute[s]." *Id*. at 249–50. Going further, the Court explained that "one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due." *Id*. at 251; *see also Carmean v. United States*, 4 Cl. Ct. 181,

---

[5] For example, a corporate taxpayer might allege its agents committed criminal, tortious, or malicious acts against the corporation that prevented the taxpayer from fulfilling its tax obligations, effectively "disabling" the taxpayer. *See Atlas Therapy, Inc. v. United States*, 66 F.Supp.2d 1203, 1207–09 (1999) (collecting cases that discuss corporate "disability"). However, the question then becomes whether the taxpayer must demonstrate the strength of its internal controls in order to plead an absence of fault. *See In re American Biomaterials Corp.*, 954 F.2d 919, 927 (3d Cir. 1992) (abating penalties where the CEO and CFO, who were in total control of the corporation, committed criminal acts against the corporation); *but see McMahan v. Comm'r*, 114 F.3d 366, 371 (2d Cir. 1997) ("[A]lleged misrepresentations [by the taxpayer's agent] do not relieve the taxpayer of his duty to ensure that his tax return was filed on time"); *Midwest Terminals, Inc. v. United States*, 882 F.Supp. 627 (W.D. Ky. 1992) (evaluating the strength of the corporation's internal controls to determine whether the internal corruption was truly "beyond [the taxpayer's] control"). The Court leaves this question for another day.

185 (1983) ("A long line of cases hold that when a taxpayer knows that a return must be filed on a particular date, he may not rely on his [agent] to file the return."). From this analysis springs the Supreme Court's bright-line rule: "The failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing under § 6651(a)(1)." *Id*. at 252. In that same vein, the duty to make payments and deposits may not be delegated. *See McMahan v. Commissioner*, 114 F.3d 366, 369 (2d Cir. 1997).

Applying *Boyle* to this case, it is clear as a matter of law that retention of an employee or software to prepare and remit tax filings, make required deposits, and tender payments cannot, in itself, constitute "reasonable cause" for All Stacked Up's failure to satisfy those tax obligations. The employee's failures are All Stacked Up's failures, no matter how prudent the delegation of those duties may have been. Other courts agree. For example, in *Atlas Therapy, Inc. v. United States*, 66 F.Supp. 2d 1203 (N.D. Ala. 1999), a rogue employee maliciously thwarted the corporate taxpayer's best intentions of complying with its tax obligations. Nonetheless, the court held that the taxpayer could not "prevail simply by showing that it relied on an employee to handle the payroll taxes, even if ordinary business care and prudence was exercised in his [or her] selection and supervision." *Id*. at 1207. In fact, because a corporation can only act through its agents and employees, a failure to comply with tax obligations will "almost invariably" be due to acts or omissions of one or more of the entity's employees or officers. *In re Frederick Savage, Inc.*, 179 B.R. 342, 347 (Bankr. S.D. Fla. 1995); *see also Mason Motors Co. v. United States*, 8 F.Supp. 2d 1177, 1179–80 (D. Minn. 1998) (collecting cases that apply the nondelegation principle in *Boyle* to corporate entities). "It is also well established that 'when there is no question that a return must be filed, the taxpayer has a personal, non-delegable duty to file the tax return when due.'" *LFAM Corp. v. United States*, 42 Fed. Cl. 698, 702–03 (1999) (quoting *Carmean v. United States,* 4 Cl. Ct. 181, 185 (1983)); *see also United States v. Kroll,* 547 F.2d 393, 396 (7th Cir. 1977)) (refusing to accept as "reasonable cause" plaintiff's excuse that he relied upon his agent to ensure tax return was filed on time); *Pediatric Affiliates, P.A. v. United States*, No. 05-3108 (MLC), 2006 WL 454374 (D.N.J. Feb. 23, 2006) (granting the government's motion to dismiss under Rule 12(b)(6) because, under *Boyle*, reliance on an agent cannot establish reasonable cause). Consequently, the delegation of tax preparation duties as a matter of business operations bears no relation to whether "reasonable cause" exists to excuse All Stacked Up's failures to file, deposit, and pay taxes as a matter of law.

Having established that the failures of its agents are binding on All Stacked Up, the Court now turns to whether user error regarding the employee's use of QuickBooks software can constitute "reasonable cause." Quite simply, it cannot. "It requires no special training or effort to ascertain a deadline and make sure that it is met." *Boyle*, 469 U.S. at 252. Utilizing tax preparation software does not alleviate the taxpayer's duty to be aware of, and comply with, the deadlines set forth in the tax code. *See In re Craddock*, 149 F.3d 1249 (10th Cir. 1998) (finding that even though the taxpayer's "accounting staff [were] overworked and his computer system was inefficient," he could not demonstrate reasonable cause because the taxpayer failed to show inability to comply with his tax obligations). Failure to meet deadlines due to an agent's inability to operate tax preparation software, *i.e.* carelessness, is not consistent with "ordinary business care and prudence" under Treas. Reg. § 301.6651-1(c)(1), thus cannot form the basis of a claim of "reasonable cause." *See, e.g.*, *Deaton Oil Co., LLC v. United States*, 904 F.3d 634 (8th Cir. 2018) (affirming dismissal under Rule 12(b)(6) where the corporate taxpayer did not allege

absence of fault); *Intress v. United States*, 404 F.Supp.3d 1174 (M.D. Tenn. 2019) (granting motion to dismiss because error in using e-filing software is not "reasonable cause"; e-filing is not "universally mandatory" and the taxpayer was not otherwise disabled from timely filing returns); *Rossman v. United States*, No. 11-139T, 2012 WL 726687 (Fed. Cl. Feb. 13, 2012) (granting a motion to dismiss where the taxpayer was not *disabled*, but merely impeded, from filing tax returns and making payments); *Willett v. United States*, No. 19-CV-04364-CRB, 2020 WL 906724 (N.D. Cal. Feb. 25, 2020) (dismissed under Rule 12(b)(6) because the corporate taxpayer could not show that it was disabled, *i.e.* that its agents were acting beyond its control or supervision); *cf. Kimdun Inc. v. United States*, 202 F.Supp.3d 1136 (C.D. Cal. 2016) (denying motion to dismiss because the taxpayer alleged it was "*disabled* . . . from timely [compliance with its tax obligations]" due to criminal activity by its tax preparers) (emphasis in original).

All Stacked Up further alludes to an issue with the QuickBooks software itself, separate and apart from the user error. (Compl. at 8 ("Mistakes were inadvertently made either by the QuickBooks program or the individual operating the QuickBooks program[.]")). However, All Stacked Up has not alleged any fact to support this claim, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Finally, Mr. Spraungel's injury cannot constitute reasonable cause. All Stacked Up relies on the Internal Revenue Manual in contending that "[s]erious illness experienced by the taxpayer or the taxpayer's immediate family may establish reasonable cause for filing a tax return, paying tax, or depositing tax late." (Compl. at 6–7). Indeed, *Boyle* recognizes that a disability "could well be an acceptable excuse for filing a late return" where "the *taxpayer* was . . . incapable by objective standards of meeting the criteria of 'ordinary business care and prudence.'" *Boyle*, 469 U.S. 248 n.6 (emphasis added). However, All Stacked Up—the taxpayer here—does not allege that the *corporation* was disabled, but rather that its *owner* was injured. (Compl. at 7 ("Plaintiff's *owner* suffered a serious injury to his lower back that required surgery.") (emphasis added)). The "disability" contemplated by *Boyle* must make compliance with tax obligations virtually impossible, not merely difficult or challenging. *See Boyle*, 469 U.S. 248 n.6 (discussing hardships that might put the ability to fulfill one's tax obligations "largely beyond the taxpayer's control."); *see also Matter of Carlson*, 126 F.3d 915, 923 (7th Cir. 1997) ("[T]he type of illness or debilitation that might create reasonable cause is one that because of severity or timing makes it virtually impossible for the taxpayer to comply."). In any case, a taxpayer able to continue business operations notwithstanding an injury or illness cannot show "reasonable cause" due to a disability. *Stine v. United States*, 106 Fed. Cl. 586, 592 (2012) ("Evidence that the taxpayer is able to conduct his or her business or financial affairs despite the illness shows that the illness is not severe enough to constitute reasonable cause[.]") (quoting *Matter of Carlson*, 126 F.3d at 923).

All Stacked Up makes no factual allegations to support a claim of corporate disability brought on by the owner's injury. In fact, All Stacked Up's business continued to operate despite

Mr. Spraungel's injury. (Compl., Ex. K at 123–127, Ex. M at 26–44).[6] All Stacked Up's tax filings show steady or rising payroll tax liabilities. (*Id.*). These tax filings are indicative of the business's continuing viability, if not growth, during the period following Spraungel's injury. Therefore, because it alleges the taxpayer—the business itself—was not disabled, All Stacked Up cannot assert "reasonable cause" on the basis of Spraungel's injury.

### B. Part of All Stacked Up's Claim is Barred by I.R.C. § 6511.

Even if All Stacked Up could demonstrate "reasonable cause" for failures to file, deposit, and pay its taxes, part of its claim is excluded from the statutorily allowed look-back period. A claim for credit or refund of an overpayment of tax must "be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, [whichever is later], or if no return was filed by the taxpayer, within 2 years from the time the tax was paid." I.R.C. § 6511(a). "If the claim was filed by the taxpayer [within 3 years of filing the return], the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return." I.R.C. § 6511(b)(2)(A). In other words, the taxpayer has either two years from payment of the tax or three years from filing the return to seek a credit or refund. In claiming that credit or refund, the taxpayer can only seek return or credit of sums paid during the three years prior to filing that claim. This is known as the three-year look-back period. In interpreting the predecessor to I.R.C. § 6511, the Supreme Court drew no distinction between applying the limitations to a claim for refund of tax and a claim for refund of assessed interest. *Kavanagh v.*

---

[6] The Court treats exhibits to the Plaintiff's Complaint as documents incorporated by reference, and thus part of the Plaintiff's factual allegations:

> [A] court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). And the leading commentary has explained: "the contents of any attached writing must be considered by the court in a wide variety of contexts—for example, in determining the sufficiency of the statement of a claim for relief or a defense on a motion to dismiss under Rule 12(b)(6)"; the court "obviously is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the attached material"; and "[i]t appears to be well settled that when a disparity exists between the written instrument annexed to the pleadings and the allegations in the pleadings, the terms of the written instrument will control, particularly when it is the instrument being relied upon by the party who made it an exhibit." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1327 (3d ed. 2004 & Supp. 2016).

*Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1325–26 (Fed. Cir. 2016).

*Noble*, 332 U.S. 535 (1947). It follows that a claim for refund of assessed penalties is also subject to the three-year look-back period. *See Graper v. United States*, 206 F.Supp. 173, 180 (E.D. Wis. 1962) (the Court "fail[ed] to see any valid or even plausible reason for . . . a distinction [between a claim for refund of tax and claim for refund of penalties and interest.]").

In this case, as set forth in the facts section above, All Stacked Up filed its return for the first quarter of 2014 on July 13, 2015. (Compl., Ex. M at 28). It remitted the last payment of its tax liability for the first quarter of 2014 on May 12, 2014. (*Id*. at 28–29).[7] The IRS abated a portion of the penalties and interest after this date. (*Id*.). All Stacked Up's refund claim was timely filed on October 31, 2017, thus anchoring the three-year look-back period to allow claims for any sums All Stacked Up paid from October 31, 2014, through October 31, 2017, and were applied to the first quarter of 2014. All Stacked Up's payments towards its first quarter 2014 liability do not fall within that period.

All Stacked Up asserts that, despite the statutory look-back period, the informal claim doctrine provides that "the taxpayer has a valid refund claim if the formal claim was preceded by an informal claim made within the statutory period." (Pl.'s Resp. at 2 (citing to two letters the taxpayer submitted to the IRS on September 18, 2015, and January 11, 2016)). However, as the United States correctly notes, the informal claim doctrine does not apply here.

The informal claim doctrine operates to allow a refund claim that was untimely filed under I.R.C. § 6511(a), *i.e.*, filed more than two years after payment or more than three years after the return was filed. *See United States v. Kales*, 314 U.S. 186, 193 (1941). "Courts have long applied the informal claim doctrine in order to exercise jurisdiction over cases in which the taxpayer's formal administrative claim for refund is untimely filed" with respect to a statute of limitations. *Stelco Holding Co. v. United States*, 42 Fed. Cl. 101, 109 (1998). In discussing the three-year look-back period, the Supreme Court has explained that it is not a statutory time limitation, but rather a "substantive limitation[] on the amount of recovery[.]" *United States v. Brockamp*, 519 U.S. 347, 352 (1997); *see also Boeri v. United States*, 724 F.3d 1367, 1369 (Fed. Cir. 2013). Consequently, the look-back provision is not jurisdictional in nature. *Boeri*, 724 F.3d at 1369, 1371 (affirming dismissal for failure to state a claim under RCFC 12(b)(6)).

All Stacked Up timely filed its refund claim on October 31, 2017, thus there is no statute of limitations issue here. The informal claim doctrine does not apply to extend the three-year look-back period, which is a substantive, rather than jurisdictional, limitation on recovery. Consequently, All Stacked Up cannot maintain its claim for a refund of payments made outside of the three-year look-back period for the tax period ending March 31, 2014.

---

[7] This $21,085.26 payment constituted an overpayment, which was credited to the following tax period. (Compl., Ex. M at 28–29).

## V. Conclusion

For the reasons set forth above, the Court hereby **GRANTS** the United States' motion to dismiss, (ECF No. 11), pursuant to RCFC 12(b)(6), and **DISMISSES** All Stacked Up's Complaint without prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



s/   David A. Tapp
DAVID A. TAPP, Judge